IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KELLI TAYLOR,

    Plaintiff,

v.

GRAY TELEVISION, INC.,
d/b/a Gray Media Group, Inc.
d/b/a KCTV 5,

    Defendant.

Case No. 23-2287-JWB-ADM

## MEMORANDUM AND ORDER

Plaintiff Kelli Taylor ("Taylor") brings this employment-discrimination action against her former employer, defendant Gray Television, Inc. Taylor's complaint asserted a demand for a jury trial. (ECF 1, at 14.) The case is now before the court on Defendant's Motion to Strike Jury Demand.[1] (ECF 7.) Defendant asks the court to strike Taylor's jury demand under Federal Rule of Civil Procedure 39(a)(2) because the parties' employment agreement included a waiver of any right to a jury trial. Taylor opposes the motion, arguing that the waiver was not knowing and voluntary as required by Tenth Circuit law. As explained below, the court grants defendant's motion and strikes the jury demand.

---

[1] The motion states that it is being brought by Gray Media Group, Inc. "because it is the proper (and only) defendant in this action" after numerous corporate mergers. (ECF 7, at 1 n.1 & n.2.) The court will address the potential substitution of the defendant at the October 26 scheduling conference. In the meantime, the court will use the term "defendant," rather than refer to a particular corporate entity.

I.  **BACKGROUND**

Taylor is an African American female. In 2017, she began working as a television news reporter for local Kansas City channel KCTV5. Taylor had been working as a local news reporter in Flint, Michigan, before she moved to Kansas City to accept the job at KCTV5. At the time, KCTV5 was owned by Meredith Corporation, and Taylor entered an employment agreement with Meredith Corporation in connection with her new job.

In September 2020, Meredith Corporation promoted Taylor to the third anchor position on the daily morning news. Taylor entered a new employment agreement with Meredith Corporation, effectuating her new position. The 2020 employment agreement included the following provision:

> **Bench Trial**
>
> The parties hereby voluntarily waive their right to a jury trial and agree to submit any claims to a court for a bench trial, to the full extent permissible under applicable law, Employee having been first advised to seek the advice of an attorney.

(ECF 8-1, at 13.)

In late 2021, defendant acquired Meredith Corporation and assumed Taylor's 2020 employment agreement. Shortly thereafter, defendant began transferring some of its employees from other geographic markets to the KCTV5 studio. In February 2022, defendant installed a new General Manager and a new News Director. The News Director required Taylor to perform field reporting work several days a week. Taylor viewed this as a demotion. After Taylor took Family Medical Leave Act ("FMLA") leave, she was further demoted to a full-time field reporter. She ultimately resigned her position in April 2022.

In June 2023, Taylor filed this lawsuit alleging race, sex, and disability discrimination; unlawful retaliation; and violation of the FMLA. Taylor's complaint demanded a jury trial on all her related claims. Defendant now moves to strike Taylor's jury demand on the ground that Taylor

2

waived her right to a jury trial in the 2020 employment agreement. Taylor opposes the motion, arguing that the waiver was ineffective because she did not make it knowingly and voluntarily.

## II.     LEGAL STANDARDS

"The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." *Jacob v. City of New York*, 315 U.S. 752, 752 (1942). However, like other constitutional rights, a party may waive its right to a jury trial. *Telum Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). "[A]greements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Id.* But the waiver of this fundamental right must be "knowing and voluntary." *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992).

In determining whether a contractual waiver of the jury-trial right was knowing and voluntary, courts balance four considerations: "(1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate contract terms." *Bandokoudis v. Entercom Kansas City, LLC*, No. 2:20-cv-02155-EFM, 2021 WL 1575222, at *2 (D. Kan. Apr. 22, 2021) (citing *Webster Capital Fin., Inc. v. Newby*, No 12-2290-EFM, 2013 WL 589626, at *3 (D. Kan. Feb. 14, 2013)); *see also Walker v. SC Realty Servs., Inc.,* No. 15-9932-JAR, 2016 WL 4245487, at *2 (D. Kan. Aug. 11, 2016) (discussing these four considerations); *Boyd v. U.S. Bank Nat'l Ass'n,* No. 06-2115-KGS, 2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007) (same). "While the Tenth Circuit has not determined who carries the burden of demonstrating the knowing and voluntary nature of the waiver, the majority of courts have decided that the burden lies with the party seeking to enforce the contractual waiver." *Webster Capital,* 2013 WL 589626, at *3

(quoting *Boyd*, 2007 WL 2822518, at *18); *see also Fifth Third Bank v. KC II Insure Servs., LLC*, No. 11-CV-02101-CM, 2011 WL 13228763, at *2 (D. Kan. Apr. 29, 2011) ("The majority of courts hold that the burden of establishing that the waiver was knowing and voluntary lies with the party seeking to enforce the contractual waiver."); *Hulsey v. West,* 966 F.2d 579, 581 (10th Cir. 1992) (noting that the court "need not resolve this issue" under the circumstances presented). "In the employment agreement context, placing the burden on the party seeking to enforce the contractual jury waiver—typically the employer—is appropriate due to the inherent inequality of bargaining power and risk of coercion by the employer in negotiating the employment agreement." *Walker,* 2016 WL 4245487, at *2. Here, the parties agree that defendant bears the burden of demonstrating that Taylor knowingly and voluntarily agreed to the waiver provision in her 2020 employment contract. (ECF 8, at 8; ECF 11, at 1.)

### III.  ANALYSIS

After balancing the four relevant considerations, the court determines that Taylor knowingly and voluntarily waived her right to a jury trial.

First, Taylor does not dispute that the waiver clause in her 2020 employment agreement was conspicuous. (ECF 11, at 3.) Indeed, it was clearly labeled, with the label bolded and underscored. The provision was printed in the same font size as the rest of the agreement, not a smaller font. And it was separately set-out in the same format as the rest of the agreement, not buried in another provision or attachment. Given these facts, the court finds the waiver was conspicuous. *See Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR, 2022 WL 588889, at *4 (D. Kan. Feb. 25, 2022); *Bandokoudis,* 2021 WL 1575222, at *2; *MWK Recruiting, Inc. v. Jowers,* No. 1:18-CV-444-RP, 2020 U.S. Dist. LEXIS 134891, at *10 (W.D. Tex. July 20, 2020); *Walker,* 2016 WL 4245487, at *3; *Webster Capital*, 2013 WL 589626, at *3.

Second, the court finds no gross disparity of bargaining power between the parties. "Although there is inevitably disparity in bargaining power between an employer and an employee," such inherent disparity does not weigh against enforcing a waiver provision. *Bandokoudis,* 2021 WL 1575222, at *2; *see also MWK Recruiting*, 2020 U.S. Dist. LEXIS 134891, at *6 (W.D. Tex. July 20, 2020) ("[T]he inherent disparity in bargaining relationships that is the consequence of normal employer-employee relations does not automatically render a waiver involuntary." (quotation omitted)). Rather, "the relevant inquiry is whether the disparity was 'gross' as suggested by the Tenth Circuit." *Boyd,* 2007 WL 2822518, at *19 (quoting *Telum,* 859 F.2d at 837); *see also Bandokoudis,* 2021 WL 1575222, at *2 ("[T]he Court concludes that the facts here do not establish *gross* disparity" between radio-host employee and radio-station employer.); *Fifth Third Bank*, 2011 WL 13228763, at *4 ("[T]he Court finds that a gross disparity in bargaining power would be required to invalidate a jury waiver provision." (internal modification and citation omitted)).

The undisputed facts here do not indicate a gross disparity in bargaining power. Taylor is not unsophisticated, and she does not suggest that she did not understand the waiver clause. She concedes that at the time she entered the 2020 employment agreement, she had a college degree and had been working in the television broadcast industry for at least seven years. (ECF 11-1, at 2.) She had "received many accolades for [her] job performance." (ECF 1-1, at 4.) These factors suggest Taylor could have sought employment from a different media outlet. There is nothing here to suggest that this was a situation, for example, in which Taylor was under duress, in dire circumstances, or had no other option but to accept the job on the terms offered. *See Jones*, 2017 WL 3887235, at *3.

Although Taylor notes that she is only an individual while defendant is a conglomerate, such inherent differences are not unusual in the American employment arena and do not invalidate the waiver provision. *See Jones,* 2017 WL 3887235, at *3 (finding no gross disparity in bargaining power where employee had not finished high school and employers were "a sophisticated conglomeration of corporate and business entities"). Taylor also asserts that the position at KCTV5 was a career-advancing opportunity, particularly when she began there in 2017. While that may be true, it is again a rather typical experience for those accepting new employment, and Taylor cites no case suggesting that such opportunities indicate a gross disparity in bargaining power. The fact that Taylor had been at KCTV5 for three years and likely had a viewer following before signing the 2020 agreement further suggests that she had some bargaining power at that time. In the end, nothing in the record suggests that the parties' differing bargaining power was gross or anything more than the inherent disparity that is a consequence of normal employer-employee relations. This factor weighs in favor of enforcing the contractual waiver.

Third, Taylor had ample experience in the broadcast industry at the time she signed the 2020 employment contract. As noted above, she had a bachelor's degree and had worked in the industry since 2013. Taylor argues that her background does not include legal training, such that it would qualify her to negotiate contracts. But if the court were to analyze the third factor so narrowly, nearly all waiver agreements entered by non-lawyers would be struck as involuntary. The lack of legal training or experience are inapposite if the employee is sophisticated enough "to understand the import of a jury waiver provision." *See Jones,* 2017 WL 3887235, at *4 (quoting *Zavala v. Aaron's, Inc*., No. 4:15-CV-123, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015)). Here, Taylor was educated and sophisticated enough to understand the provision. It is undisputed that she entered into at least one other employment contract with defendant and had previous

6

employment experience with two other broadcast stations. (ECF 11-1, at 2.) Additionally, the waiver provision at issue was "relatively straightforward and easily understood," such that any lack of business or legal experience on Taylor's part was immaterial. *See Busch v. Broad Mgmt. Grp.*, No. 22-2746, 2023 WL 2894692, at *2 (E.D. La. April 11, 2023). These factors support a finding that Taylor's waiver was knowing. *See Bandokoudis,* 2021 WL 1575222, at *2 (holding that the "'[l]arge disparities in education and familiarity with the commercial processes [which] can permit an overreaching party to turn the other party's lack of knowledge into an unfair advantage'" did not exist where radio host was experienced in the industry and had entered other contracts (quoting *Boyd*, 2007 WL 2822518, at *19)).

Fourth, the record suggests Taylor had the opportunity to negotiate the 2020 employment agreement, even if she did not take it. As noted above, the waiver provision itself explicitly suggested Taylor seek the advice of an attorney. Additionally, the signature page of the agreement included a paragraph, set out in all caps, attesting that "EMPLOYEE HAS BEEN INFORMED THAT, BEFORE SIGNING, HE/SHE SHOULD CONSULT AN ATTORNEY OF HIS/HER OWN CHOOSING AT HIS/HER OWN EXPENSE TO REVIEW THIS AGREEMENT." (ECF 8-1, at 5.) Such encouragement to seek legal review suggests an openness to negotiate. Moreover, Taylor concedes that, in the broadcast industry, employees occasionally negotiate the salary provisions of their employment agreements. (ECF 11-1, at 3.)

Taylor states that past experience told her that attempting to negotiate the agreement would have been met with a "take it or leave it response" by defendant. (ECF 11, at 6-7.) She urges the court to weigh this factor in her favor because defendant has presented no evidence that "a suggestion by Plaintiff to change terms would have been honored," or that "there was communication from Defendant along the lines of 'if you don't like any of these terms, let us know

7

and we can try and work something out.'" (ECF 11, at 7.) But "[t]he mere fact that defendant may have rejected proposed changes to the waiver provision—if they had been proposed, which they were not—does not necessarily alter the knowing and voluntary nature of plaintiff's waiver." *Boyd,* 2007 WL 2822518, at *19 (internal quotations and citation omitted). That defendant *may* have rejected a proposed change to the jury-waiver clause, had Taylor offered one, "is too speculative of a basis to find the jury waiver was not knowingly or voluntarily given." *Id.*; *see also Jones*, 2017 WL 3887235, at *2 (holding that even though "there was no discussion, explanation, or negotiation of the [employment] contract," the fact that both parties were mutually bound by the waiver provision (i.e., it was bilateral) weighed in favor of finding the contract negotiable). The court also weighs this factor in defendant's favor.

## IV. CONCLUSION

"Although the right to a jury trial is a vital and cherished right, the Court is loath to set aside lawful provisions of a valid contract entered into by two consenting parties." *Bandokoudis,* 2021 WL 1575222, at *3. After balancing the relevant factors, the court concludes that Taylor's waiver of her right to a jury trial was knowing and voluntary. The court would reach this same conclusion even if one of the factors had weighed in Taylor's favor. Upon this finding of waiver, Taylor "agrees that all of her claims are subject to such waiver." (ECF 11, at 8.) Thus, should this case reach the trial stage, the court will conduct a bench trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Jury Demand (ECF 7) is granted.

Dated October 5, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

8