# EMPLOYMENT AGREEMENT

This Employment Agreement ("the Agreement") is effective as of **September 7, 2020** between **Kelli Taylor**, ("Employee") and **Meredith Corporation ("Meredith")** the ("Employer").

**Term**. Subject to the terms of this Agreement, Employer hereby employs Employee and Employee hereby accepts employment with Employer, beginning on **September 7, 2020** and ending on **September 6, 2023** as **Newscaster** (as further described in Exhibit A, the "Role"), subject to Paragraph 12 of this Agreement.

**Salary**. Employer agrees to pay Employee an initial annual salary of **$80,000**.

This Agreement includes the following attachments:

Standard Terms and Conditions

Exhibit A – The Role
Exhibit B – Compensation
Exhibit C – Restrictive Covenants
Exhibit D – Special Provisions

This agreement is a contract which imposes obligations on both you and the Employer. One of the obligations imposed on you is that you will remain in the Employer's employ for the term of this agreement. Simply stated, unless the Employer consents you cannot under any circumstances leave the Employer's employ and take a job elsewhere. The fact that the other job is in a different industry or in a different market does not change things. Because you have chosen to enter into this agreement, the Employer assumes that you understand and accept this obligation.

This Agreement may be executed in counterparts and signed copies may be exchanged via paper or electronic means, in which case each copy shall be deemed an original and taken together shall constitute one Agreement.

THE PARTIES MUTUALLY WARRANT AND REPRESENT THAT EACH OF THEM HAS READ AND UNDERSTANDS AND AGREES TO THE PROVISIONS OF THIS AGREEMENT. EMPLOYEE HAS BEEN INFORMED THAT, BEFORE SIGNING, HE/SHE SHOULD CONSULT AN ATTORNEY OF HIS/HER OWN CHOOSING AT HIS/HER OWN EXPENSE TO REVIEW THIS AGREEMENT.

This Agreement is executed by the parties and effective as of the day and year first above written.

| | |
|---|---|
| **EMPLOYEE NAME** | **Meredith Corporation ("Meredith")** |
| DocuSigned by: *Kelli Taylor* <br> —34EED610BEB04D0... <br> Kelli Taylor | By: DocuSigned by: *Charlie Henrich* <br> —6D014F482F224F4... <br> Title: VP/GM |

EX A

## STANDARD TERMS AND CONDITIONS

1.   *Conditions Precedent*

(a)   The offer of employment embodied in this Agreement is conditioned upon Employee's execution of the Employer's employment application, upon the Employer's verification of Employee's eligibility for employment under applicable regulations of the Immigration and Naturalization Service, and upon Employee successfully completing any post-offer of employment fitness for duty examination required and any background check required by Employer.

(b)   Employee warrants that he/she is not a party to any contract or agreement prohibiting or restricting his/her employment with the Employer and that Employee's employment by Employer will not violate any rights of any current or former employer of Employee.

2.   *Employee's Duties and Responsibilities*

(a)   Employee hereby grants to the Employer the right to use, or license to others, Employee's name, nickname, voice, biography, recorded performance, picture and likeness, and all literary, dramatic, and musical material in connection with Employee's productions, in all media in perpetuity throughout the universe, for all purposes, including news, information and advertising, institution advertising (i.e. advertising designed to create good will and prestige and not for the purpose of selling any specific product or service), including, but not limited to, advertising and promoting the program or programs in which Employee appears/reports/produces/or manages, other programs broadcast by the Employer in connection with advertising and promoting the Employer and programs in which Employee appears/reports/produces/or manages, other programs broadcast by the Employer and, in connection therewith, the product or services of any sponsor thereof; provided, however, that no direct endorsement by Employee of any product or service shall be used without Employee's written consent. All Employee's live and recorded performances/productions, and all of Employee's work products made pursuant to this Agreement, without limitation, are Employer property, and may be used by Employer in perpetuity, in any form and in any medium now known or hereafter invented.  All ideas, creations, literary, musical, and artistic material and intellectual properties created or developed by Employee during Employee's employment hereunder shall constitute works-made-for-hire.  Employer shall be the author and owner of all materials so created.  Employer shall retain the right to sell, syndicate, or license programs in which Employee appears/reports/produces/or manages, or in which Employee's voice, picture, or likeness is utilized, for public or private exhibition and without additional compensation to Employee.

(b)   Employee shall make any and all personal or professional appearances required by Employer. Employer will reimburse Employee for any expenses so incurred in accordance with Employer's rules and policies.  If paid on an hourly, non-exempt basis, Employee shall be paid his/her applicable hourly rate for time spent on such personal or professional appearances. If paid on a salary exempt basis, Employee shall not be entitled to additional compensation for such personal or professional appearances.

Page 2

  (c) Employee shall not take vacation time except as previously agreed upon in writing between Employee and the Employer designee.

3. *<u>Nature of Employment</u>*

  The parties hereby agree that Employee's employment with Employer is for the term specified above only, subject to Section 12, below, and that Employee shall have no expectation of continued employment beyond the term of employment specified herein.

4. *<u>Employer Rules, Regulations, and Policies</u>*

  Employee agrees to accept and follow all rules, regulations, and policies adopted or modified by Employer from time to time. Employee shall execute any documentation required by Employer to confirm the receipt and understanding of such rules, regulations, and policies.

5. *<u>Compensation</u>*

  (a) Salary – Employer agrees to pay Employee an initial salary described on the cover page of this Agreement. Subsequently, at Employer's discretion, Employee may be eligible for compensation adjustment pursuant to company policy. Salary shall be earned and paid in bi-weekly installments. Overtime pay, if required by law, will be paid for hours worked in excess of forty (40) in a workweek. Overtime pay is not required for, and will not be paid to, exempt employees.

  (b) Withholding – All compensation is subject to normal withholding, including, but not limited to, state and federal income tax, state disability insurance, FICA, any other withholdings required by law, and any other withholdings authorized under law by Employee.

  (c) Complete Compensation – The compensation set forth in this Section 5 and Exhibit B is paid in full consideration for services performed by Employee at Employer's direction and no other fees or compensation (other than the Benefits set forth in Section 6, below) shall be owed Employee.

6. *<u>Benefits</u>*

  (a) Employee shall be entitled to receive the fringe benefits of employment generally available to other similarly employed employees of Employer in accordance with the terms (including, without limitation, eligibility terms) of applicable benefits plans and policies of Employer, subject to any superseding provision of this Agreement. Unless otherwise required by law, fringe benefits may be modified or terminated at Employer's total discretion at any time.

7. *<u>Exclusive Services and Conflicts of Interest</u>*

  (a) Employee agrees to perform his/her duties exclusively for the Employer and, thus, shall not perform or prepare to perform services for his/her own business or for others of any similar nature as those rendered to Employer unless Employer authorizes such service in writing. Employee agrees that he/she shall not become involved in a conflict of interest or, upon discovery thereof, allow such a conflict to continue at any time during his/her employment with Employer. Moreover, Employee agrees that he/she shall immediately disclose to Employer any facts which might involve a conflict of interest that has not been approved by Employer.

Employee acknowledges that any violation of this Section will cause Employer irreparable harm for which money damages alone would not adequately compensate Employer. Accordingly, Employee acknowledges that if Employee is in violation of this Section, Employer has the right to apply for and obtain injunctive relief to stop such a violation, in addition to other appropriate relief.

(b)    Employee agrees not to engage in any activity that could defame or otherwise disparage or cause disrepute to Employer, its officials, employees, agents, or affiliates.

**8.    *Confidential Information***

(a)    Employee understands that he/she will create, acquire and/or have access to confidential information pertaining to Employer, its directors, officers, employees or shareholders, and Employer's affiliates, licensees, partners, and clientele (hereinafter "Confidential Information"). Employee hereby acknowledges that such Confidential Information is unique and valuable to Employer's business and that Employer would suffer irreparable injury if Confidential Information was divulged to the public or to persons or entities in competition with Employer. Therefore, Employee hereby agrees to keep all Confidential Information in strict confidence, both during and after termination of employment. Employee specifically agrees that he/she will not at any time disclose to others, use, copy or permit to be copied any Confidential Information relating to Employer, except in furtherance of his/her duties on behalf of Employer or with the prior consent of Employer. The parties recognize that Employee may have a right to disclose Confidential Information to a state or federal government agency in the enforcement of government regulatory concerns or as otherwise required by law.

(b)    For purposes of this Agreement, "Confidential Information" shall mean and include, without limitation, information related to the business affairs, property (including intellectual property and specialized programs and systems), methods of operation, news planning, strategic plans, financial information, marketing, pricing information, customer or client information, trade secrets, or other data which relates to the business or operations of Employer, and all other information obtained by Employee from and during employment, which concerns the affairs of Employer and which Employer has requested be held in confidence or could reasonably be expected to desire be held in confidence, or the disclosure of which would likely be detrimental or disadvantageous to the Employer or any of its affiliated entities, or its and their directors, officers, employees or shareholders.

(c)    Notwithstanding the other provisions in this Agreement regarding the disclosure of trade secrets and confidential information, Employee will not be subject to civil or criminal liability under any state or federal trade secret law if Employee discloses a trade secret under the following circumstances: (i) in confidence to a Federal, State, or local government official either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal; or (iii) in a lawsuit alleging retaliation by the Company against Employee for reporting a suspected violation of law, Employee may disclose the trade secret to Employee's attorney and use that information in the court proceeding, as long as any document containing the trade secret is filed under seal and Employee does not disclose the trade secret except pursuant to a court order.

**9.    *Return of Company Property***

Any property of Employer which Employee may utilize or have access to in the performance of his/her duties hereunder, whether in paper, electronic, or other format, and including any information prepared for or acquired by Employee in the course of his/her duties as Employee hereunder, shall be and remain at all times the sole property of Employer and shall be surrendered, without delay, to Employer by Employee upon request and/or upon termination of this Agreement for any reason.

10. *Remedies*

(a) In the event of any pending, threatened, or actual breach of any of the provisions of Sections 8 and/or 9 of this Agreement, Employer shall be entitled to an injunction ordering the return of all such documents, and any and all copies thereof, and restraining Employee from using or disclosing any Confidential Information, for his/her benefit or the benefit of others. Employee further agrees that any breach or threatened breach of any of the provisions of Sections 8 and/or 9 would cause irreparable injury to Employer, for which it would have no adequate remedy at law. Nothing herein shall be construed as prohibiting Employer from pursuing any other remedies available to it for any such breach or threatened breach, including the recovery of damages.

(b) In the event of any pending, threatened, or actual breach of any covenants or provisions of Exhibit C of this Agreement, it is understood and agreed by Employee that the remedy at law for Employer may be inadequate and that Employer shall be entitled to a restraining order or injunctive relief from any court of competent jurisdiction, in addition to any other remedies at law and in equity. In the event that Employer seeks to obtain a restraining order or injunctive relief, Employee hereby agrees that Employer shall not be required to post any bond in connection therewith. With respect to any violation of Exhibit C, or any other breach of this Agreement, Employee agrees that, in addition to Employer's entitlement to obtain a restraining order or injunctive relief, he/she shall pay as liquidated damages to Employer the sum of **Ten Thousand ($10,000.00) Dollars**. Should Employee commit an actual breach of any covenants or provisions of Exhibit C, it is agreed that the term of any covenants of Exhibit C shall be automatically extended for a period of one (1) year from the date on which Employee permanently ceases such violation, or from the date of an entry by a court of competent jurisdiction of a final order or judgment enforcing such covenant, whichever is later.

(c) The rights and obligations specified in Sections 8, 9, and Exhibit C, are expressly agreed and understood to survive the termination of Employee's employment and this Agreement. Employer's right to injunctive relief shall be in addition to, and not in lieu of, rights to damages or other remedies as Employer shall be entitled to receive.

11. *Attorneys' Fees and Costs*

If Employee breaches any of the terms of this Agreement then Employee shall reimburse Employer for all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the terms of this Agreement, without proof of any actual damages which may have been or may be caused by such breach, and without regard to the type of relief secured.

12. *Termination of Employment*

(a) Employee's employment and this Agreement shall terminate on the date of the occurrence of any of the following events:

    i. The death of Employee.

    ii. Effective on the first anniversary date of this Agreement and annually thereafter, upon at least sixty (60) days' prior written notice by the Employer to Employee or pay in lieu thereof.

    iii. Upon Employee's inability to perform the essential functions of his/her position, with or without reasonable accommodation.

    iv. For cause, as determined at the discretion of the Employer, whose discretion shall not be exercised arbitrarily or capriciously. For purposes of this Agreement, "cause" shall mean actions by Employee involving a breach of any term of this Agreement, misconduct by Employee, including but not limited to a violation of the Meredith Code of Business Conduct and Ethics or Company policy, unsatisfactory job performance, Employee's absence without notice for three (3) or more consecutive days, the failure to perform the duties of the Role or such other duties as may be assigned pursuant to this Agreement, incompetence, the obstruction of business operations, violation of Employer work rules, insubordination or conduct that would injure the good reputation of the Employee, the Station, or the program on which Employee appears.

    v. Unless this Agreement is renewed or extended in a signed writing, or unless a new contract is executed in a signed writing, Employee's employment shall automatically terminate upon completion of the term of employment specified above. If, however, only at the Employer's discretion, Employee remains employed beyond the term of employment specified above, Employee shall be employed "at-will" and with no enforceable expectation of continued employment.

**13.** **_Notification of Employment Offer_**

During the term of this Agreement, Employee agrees to immediately inform Employer in writing of any offer of employment received by Employee from any third party to perform services similar to the type performed under this Agreement.

**14.** **_Payola/Plugola_**

Except as authorized by Employer, Employee will not:

(a) Accept or agree to accept, directly or indirectly, any money, service, or other valuable consideration for the inclusion of any matter in any broadcast by Employer; or

(b) Mention or identify in any broadcast by Employer any product or service, other than those of a sponsor or except as may be required for bona fide news reporting.

15. *Pay, No Play*

Nothing in this Agreement shall be deemed to obligate Employer to use Employee's service on any program or to broadcast or otherwise exploit any program, or recording thereof, for which such services have been performed. Employer shall have fulfilled its obligations under the Agreement by remitting to Employee the compensation specified herein until the termination of Employee's employment.

16. *Right to Insure*

Employer shall have the right to purchase life, accident, liability, or other similar insurance covering Employee, at its expense, and Employee shall have no right or interest with respect to such insurance coverage. Employee shall assist Employer in procuring such insurance by submitting to a medical examination, completing necessary documentation, or performing any other act that may be required to procure such insurance.

17. *Indemnity*

(a) Employer will indemnify and hold Employee harmless from and against any and all liability, actions, claims, damages, or expenses arising from reasonable and appropriate actions taken by Employee within the scope of Employee's employment. Employer shall receive prompt notice of any claim or litigation. Employee's failure to provide reasonable notice of any action or claim shall excuse Employer's obligation to indemnify Employee. The rights contained in this Section 17(a) shall survive Employee's termination of employment with Employer.

(b) Employee shall indemnify and hold Employer harmless from and against any and all liability, actions, claims, demands, or expenses arising from Employee's gross negligence or intentional wrongful acts, any unauthorized act by Employee, any act or omission of Employee prior to the date of this Agreement, or any breach by Employee of any of the representations, warranties, or provisions of this Agreement. Employer shall retain the right to assume the defense of and total control over the disposition of any liability, actions, claims, or demands and Employee shall fully cooperate with Employer over such matters. Employee shall immediately notify Employer of any such matter to which indemnity hereunder may apply. The rights contained in this Section 17(b) shall survive Employee's termination of employment with Employer.

18. *Force Majeure*

If Employer's operations are suspended because of an act of God; act of war or terrorist action; accident; fire; lockout, strike, or other labor dispute; riot or civil commotion; act of public enemy; order or act of government; or other cause of similar nature beyond the control of Employer, Employer may suspend the performance of services by Employee and the payment of compensation hereunder while operations are suspended. No such suspension shall operate to extend the term of this Agreement.

Furthermore, in any applicable period, if Employer's implements a broad reduction of wages, furlough, or similar economic measure for Employer's newsroom employees ("Emergency Measure"), this Agreement shall be deemed to implement such Emergency Measure upon written notice from Employer to Employee regarding such Emergency Measure.

19.  *Binding Effect*

This Agreement shall be binding upon Employee and, if applicable, upon his/her spouse, next of kin, heirs, attorneys, representatives, administrators, executors, successors, and assigns, and shall apply fully and accrue to the benefit of the Employer, the Employer's representatives, and each of them individually, and to its administrators, representatives, executors, successors, and assigns. For the avoidance of doubt, Meredith may assign or transfer this Agreement in relation to any change of control of Employer or the applicable Station or business unit or sale of all or substantially all of the assets of the applicable Station or business unit.

20.  *Construction*

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties. The paragraph headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

21.  *Severability*

If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect and subject to reasonable reformation. If any provision is held invalid or unenforceable with respect to any particular circumstance, such provision shall nevertheless remain in full force and effect in all other circumstances.

22.  *Choice of Law*

This Agreement shall be construed in accordance with the laws of the state where the Station is licensed by the Federal Communications Commission, or, if not employed by a Station, the state where Employee's office is located, applicable to Agreements to be performed entirely within that state.

23.  *Limitations Period*

Any charge, claim, or lawsuit relating to Employee's employment with Employer (except those that the law specifically excludes from shortening the statutes of limitations or those arising under Sections 8, 9, or Exhibit C) must be filed no later than one hundred and eighty (180) calendar days from the date the alleged employment action arose, or less if the applicable statute of limitations period is shorter for the specific cause of action. The parties agree to waive any statute of limitations or other claim eligibility time period to the contrary, unless prohibited by law. Any claims properly filed within the limitations period must be brought within a court having jurisdiction over the county and state of the location of the Station's main studio, or if not employed by a Station, the state where Employee's office is located. If a party fails to file their charge, claim, or lawsuit in accordance with the terms of this Section, they will forever lose their right to litigate their claim in any manner. If a party loses their right to litigate their claim under this Agreement, they cannot file suit or a claim in any other jurisdiction or forum. Should either party file their claim in a court or forum not pursuant to this Agreement, the action shall not toll or extend the time for filing pursuant to this Agreement. The parties agree that any dispute

concerning the timeliness of any such claim, charge, or lawsuit shall be determined by a court of competent jurisdiction and not by any arbitrator or other person.

24. *Bench Trial*

The parties hereby voluntarily waive their right to a jury trial and agree to submit any claims to a court for a bench trial, to the full extent permissible under applicable law, Employee having been first advised to seek the advice of an attorney.

25. *No Waiver*

No waiver by either party hereto of a breach of any provision of this Agreement by any other party, or of compliance with any condition or provision of this Agreement to be performed by such other party, will operate or be construed as a waiver of any subsequent breach by such other party or any similar or dissimilar provision or condition at the same or any subsequent time. The failure of either party hereto to take any action by reason of any breach will not deprive such party of the right to take action at any time while such breach continues.

26. *Amendments*

Any amendments to this Agreement, including any extension or renewal of the Term of Employment referenced in this Agreement, are required to be made in writing and signed by the parties to be effective.

27. *Entire Agreement*

This Agreement, including the exhibits and attachments hereto, contains the entire agreement between the parties and supersedes all prior oral and written agreements, understandings, commitments, and practices between the parties, including, but not limited to, all prior employment arrangements, whether or not fully performed by Employee before the date of this Agreement.

## EXHIBIT A – THE ROLE

Employee shall perform the services hereunder for **Meredith Corporation ("Meredith")**. To the extent the applicable business unit is a broadcast television station with an FCC license, then the business unit listed here is the Station hereunder.

Employee will be employed by Employer to fulfill the Role. As such, Employee shall ensure his/her availability to perform the duties of the Role, or such other duties as may be assigned by the News Director, General Manager, or other Employer designee. Without limiting the foregoing, Employee's duties may include (in any media now known or hereinafter developed): appearances on any media, hosting of programs, writing, editing and producing scripts, news stories and newscasts, announcing, recording announcements, news gathering in the studio and in the field, other field work, news research, rewriting stories and scripts, field reporting, live appearances (including community events), photography, participation in meetings, and any other duties which may be assigned by the Employer from time to time. Employee may be assigned to work any shift, shifts, or split-shifts as assigned by Employer. Employee's services shall be performed in a careful, competent, and professional manner consistent with the standards of quality set by the Employer.

The Role is **Exempt** and is **full-time**.

The initial Employer Designee hereunder is the **General Manager**. Employer may change its designee upon written notice.

As an exempt employee, your salary is understood by you and the Employer to represent pay for all hours worked during each workweek regardless of the actual number of hours you work (which both parties understand will fluctuate from time to time).

### *Newscaster*

Appearances on the air or in any other media, writing, editing and producing scripts, news stories and newscasts, announcing, recording announcements, newsgathering in the studio and in the field, other field work, news research, rewriting stories and scripts, field reporting, and live appearances.

## **EXHIBIT B – COMPENSATION**

### ***Compensation***

Beginning on the Effective Date, Employee's base salary shall be $80,000 (annualized). Subsequently, Employee's base salary may be adjusted in accordance with the Collective Bargaining Agreement.

## EXHIBIT C – RESTRICTIVE COVENANTS

*Restrictive Covenants*

(a) Employee hereby recognizes and acknowledges that, in the event Employee were to enter into competition with Employer, Employee's knowledge of Employer's Confidential Information would be of benefit to a competitor of Employer, and could cause irreparable harm to Employer's business interests. Employee also acknowledges that Employee's consent and agreement to enter into the restrictive covenants set forth herein are an integral condition of this Agreement, without which Employer would not have agreed to provide Confidential Information to Employee nor his/her compensation, benefits, and other terms of this Agreement.

(b) Accordingly, in consideration for his/her employment, compensation, benefits, access to and entrustment of Confidential Information, and the goodwill, training and experience provided to Employee during his/her Employment, Employee hereby agrees that during his/her Employment, and after his/her employment is terminated for any reason, Employee shall not directly or indirectly, acting alone or in conjunction with others, for his/her own account or for the account of others, including, without limitation, as an officer, director, stockholder, owner, partner, joint venturer, employee, promoter, consultant, agent, representative, or otherwise:

    i. For **six (6) months**, render any services or perform any duties substantially similar to the services and/or duties he/she performed for Employer in the last two (2) years of his/her employment with Employer, for any television station operating in **Kansas City, MO**, or within **Kansas City, MO** for any other competitor of the Employer.

    ii. For **six (6) months**, authorize or permit Employee's name, voice, or likeness to be used in any advertising or promotion within the **Kansas City, MO** DMA, for any television station licensed to a community in the **Kansas City, MO** DMA, or cable system or other MVPD operated within the **Kansas City, MO** DMA.

    iii. For one (1) year, solicit or induce any client, or other individual or entity having a business relationship with Employer to cease doing business with Employer; or solicit for employment, hire or employ in any capacity (including, for the avoidance of doubt, any independent contractor relationship) any person who as of your last day of employment was employed by Employer.

    iv. In perpetuity, disclose or divulge to any other person, partnership, corporation, business, organization, firm, or other entity whatsoever, or use for Employee's own benefit or for the benefit of any other person, partnership, corporation, business, organization, firm, or other entity any Confidential Information of Employer other than as may be required by law.

(c) Employee specifically agrees that such limitations as to the period of time, geography, and scope of restriction on his/her activities, as specified above, are reasonable and

necessary to protect the legitimate business interests of Employer. However, should the time period or other restrictions set forth herein be deemed invalid or unenforceable in any respect, the parties acknowledge and agree that permissible reformation may be made with respect to such time period or other restriction in order to protect Employer's business interests to the maximum permissible extent.

(d) Employee shall disclose the terms and conditions specified in these restrictive covenants to any prospective or actual future employer and expressly authorizes Employer to make the same disclosure.

## EXHIBIT D – SPECIAL PROVISIONS

## KCTV—AFTRA

1. *Collective Bargaining Agreement*

    (a)    Meredith and the Station are parties to a collective bargaining agreement (the "CBA") entered with the Screen Actors Guild—American Federation of Television and Radio Artists, Missouri Valley Local (the "Union") made effective January 1, 2018. The bargaining unit covered by the CBA specifically includes employees performing the Role set forth in Exhibit A of the Agreement, and Employee is a member of the Union and the bargaining unit. Employer and Employee wish to expressly make certain terms and conditions in the CBA take precedence over the Agreement. Accordingly, Employer and Employee agree as follows:

        (i)    <u>Probationary Period for New Hires</u>. Irrespective of any other provision in the Agreement, the probationary period for Employee shall be that period set forth in Section 14.1 of Article XIV of the CBA. Pursuant to Section 14.1 of the CBA, which section is incorporated into the Agreement as if set forth fully therein, the probationary period for Employee shall be one-hundred and twenty (120) days from the date of employment. While in his or her probationary period, Employee may be discharged by Employer at any time if Employee is not satisfactory to Employer. Such discharges, as provided for in Section 14.1, shall not be subject to the grievance procedure set forth in the CBA, or otherwise. All other terms and conditions pertaining to probationary periods included Section 14.1, such as those pertaining to extending an Employee's probationary period, shall additionally apply to the Agreement with full force and effect, as if set forth fully therein.

        (ii)    <u>Notice</u>. Irrespective of any other provision in the Agreement, the notice provisions in the CBA shall be controlling with respect to the subject matter such notice period is made applicable to by the CBA, except that in no case shall the notice period for Section 12(a)(ii) of the Agreement be less than sixty (60) days.

        (iii)    <u>Wage Freeze(s)</u>. Irrespective of any other provision in the Agreement, any increase of Employee's salary identified therein shall be subject to the wage freeze provision set forth at Section 19.10 of Article XIX of the CBA. For the avoidance of any doubt, the wage freeze provision(s) set forth at Section 19.10 of Article XIX of the CBA shall apply to the Agreement and shall control over any conflicting provision that may be found in the Agreement.

        (iv)    <u>Termination of Employment for Suitability</u>. In addition to those reasons set forth in Section 12 of the Agreement, Employer may also terminate Employee's employment for any applicable reason included in the CBA, including, but not limited to, suitability in accordance Section 14.3 of Article XIV of the CBA.

    (b)    With respect to the subject matter described above in Sections 1(a)(i-iv), it is expressly agreed and understood that the applicable terms and conditions of the CBA shall control over the Agreement with respect to any conflict that may exist. It is further expressly agreed that Employee's employment may be terminated for suitability in accordance with Section 1(a)(iv) above, irrespective of any other term or condition in the Agreement. Those

terms and conditions of the CBA referred to in Sections 1(a)(i-iv) above are expressly incorporated into the Agreement as if set forth fully therein.

(c) In addition to the foregoing, Employer and Employee further agree as follows:

(i) <u>Minimum Scale</u>. In the event the compensation provided Employee under the terms of this Agreement is in excess of any applicable minimum scale set by the CBA, Employer shall have the right to apply such excess against any extra payments that would otherwise be due Employee under the terms of such collective bargaining agreement.

(ii) <u>Severance Payments</u>. Any severance payments to which Employee may be entitled under the terms of the CBA shall be credited against any pay-in-lieu payments made by the Employer to Employee under the terms of this Agreement.

(d) Sections 1(c)(i-ii) above shall control over any conflicting provision that may be found in the Agreement.

(e) In the event that Meredith and the Station negotiate a new collective bargaining agreement with the Union during the term of this Agreement, Employer and Employee expressly agree that any successor provisions in the new collective bargaining agreement regarding probationary periods for new hires, notice, wage freeze(s), or termination for suitability shall be automatically incorporated into this Agreement and shall control over any other term or condition in the Agreement. Furthermore, the terms and conditions set forth in Section 1(c) of above shall apply to this Agreement with respect to any successor collective bargaining agreement entered after this Agreement is executed.

(f) Employee hereby represents and warrants that Employer has provided Employee with a copy of the CBA and that Employee has had sufficient to time satisfactorily review the CBA and this Exhibit D, to have consulted with a Union representative regarding the CBA and Exhibit D, or to have same reviewed by counsel of Employee's choosing.

**2.** *<u>Talent Agent</u>*

Employee warrants that if he/she is represented by a talent agent, he/she has identified that talent agent in writing to the Station's News Director. Employee also warrants that he/she will notify the Station's News Director in writing in the event he/she changes agents, or secures an agent, during the term of this Agreement.

**3.** *<u>Professional Appearance</u>*

If on air, Employee shall regularly, and upon demand, consult with the News Director or other Employer designee on matters of professional appearance, and Employee shall not noticeably alter his/her hair style, hair color, make-up or clothing, or otherwise modify his/her on-air appearance without first having obtained the consent of the News Director or other Employer designee. Employee shall follow any other directive of the Employer with respect to Employee's on-air appearance.

V1.1