IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KELLI TAYLOR,

        Plaintiff,

v.                                                    Case No.  23-2287-JWB-ADM

GRAY MEDIA GROUP, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's objections to Magistrate Judge Angel D. Mitchell's order issued on October 6, 2023 which strikes Plaintiff's demand for a jury trial. (Doc. 17.) The objections are fully briefed and ripe for decision. (Doc. 18, 26.) Plaintiff's objections are OVERRULED for the reasons stated herein.

**I.   Facts**

Kelli Taylor is an African American woman who was employed as a news reporter by Kansas City channel KCTV5. (Doc. 1, at 3.) Meredith Corporation ("Meredith") owned the KCTV5 station, and due to her work performance, Meredith promoted Taylor to the third anchor position on the daily morning news. As a result, Taylor entered a new employment agreement with Meredith. This contract contained a jury waiver section, which reads:

> **24.** *Bench Trial*
>
> The parties hereby voluntarily waive their right to a jury trial and agree to submit any claims to a court for a bench trial, to the full extent permissible under applicable law, Employee having been first advised to seek the advice of an attorney.

(Doc. 18-1, at 9.)

1

In 2021, Meredith sold the KCTV5 station to Defendant Gray Media Group, Inc, who assumed Taylor's contract.  After assuming control, Defendant began transferring some of its employees from other geographic markets to the KCTV5 studio, including installing a new general manager and news director in February 2022.  One of the first acts by the news director was making Taylor a field reporter in addition to her third anchor position, which she viewed as a demotion.  Due to the changed workplace environment and new stresses, Plaintiff was diagnosed with shift work sleep disorder and took Family and Medical Leave Act ("FMLA") leave as a result.  Upon returning to work, Taylor was informed that she would not be returning to her part-time third anchor position but instead would be a full-time field reporter.  Taylor then resigned her position.  In March 2022, Taylor filed a claim for retaliation and discrimination with the EEOC.  (Doc. 1-1.) Taylor received her right to sue letter on May 10, 2023.  (Doc. 1-2.)

In June 2023, Taylor filed this lawsuit alleging race, sex, and disability discrimination; unlawful retaliation; and violation of the FMLA.  Taylor's complaint demanded a jury trial on all her related claims.  (Doc. 1, at 14).  Defendant then moved to strike Plaintiff's jury demand.  (Doc. 7).  Magistrate Judge Mitchell granted the motion to strike on October 6, 2023.  (Doc. 14).  Plaintiff then timely filed a motion for review and objections.  (Doc. 17).

**II.    Standard**

A district court's review of a magistrate's orders as to non-dispositive pretrial matters is governed by 28 U.S.C. § 636(b)(1)(A).  A party's right to a jury trial is a non-dispositive matter. *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 22-2435-DDC-TJJ, 2024 WL 3511456, at *2 (D. Kan. July 23, 2024).  When a non-dispositive pretrial matter is ruled upon by a magistrate judge and a timely and specific objection to the ruling is made, the district judge is required to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R.

Civ. P. 72(a). "Under this clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Kaeckell*, No. 19-mc-209-DDC, 2019 WL 6486744, at * 1 (D. Kan. Dec. 3, 2019) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The "contrary to law" standard, by contrast, permits the district court to independently review purely legal determinations made by the magistrate judge, and to modify or set them aside if the order "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 2790203, at *2 (D. Kan. July 14, 2011)).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.")

Based on the foregoing, the court will review Plaintiff's objections under the clearly erroneous or contrary to law standard.

**III.    Analysis**

In her motion to review, Plaintiff contends that Magistrate Judge Mitchell misapplied the law in striking her jury demand and that the terms of the contract that specified a jury waiver clause are ambiguous. The court will address each objection in turn.

In determining whether a waiver was knowing and voluntary, the court is to consider and weigh four factors which are set forth in *Bandokoudis v. Entercom Kansas City, LLC*, No. 2-20-

3

cv-02155-EFM, 2021 WL 1575222 (D. Kan. Apr. 22, 2021). While Plaintiff agrees that those factors apply to the present analysis, she contends that the Magistrate Judge misapplied these factors. (Doc 18.) Of the four factors, she only contests three; namely, that there was a gross disparity of bargaining power in the formation of the contract, Plaintiff lacked business and professional experience, and Plaintiff was not able to negotiate the terms of the contract.[1] After reviewing the arguments and record, this court disagrees.

First, the mere fact that a disparity of bargaining power exists between an employer and employee is not enough to invalidate an otherwise valid contractual waiver of the right to jury trial. Instead, there must be a gross disparity of bargaining power. *Boyd v. U.S. Bank Nat. Ass'n*, No. 06-2115-KGS, 2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007); *Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2007 WL 1266675, at *2 (D. Kan. Apr. 30, 2007); *Wisecarver v. Sunrise Senior Living Servs., Inc.*, No. 222CV02296JARADM, 2023 WL 2784857, at *3 (D. Kan. Apr. 5, 2023). Plaintiff fails to point to any allegation in her complaint or any authority that would support a conclusion that there was a gross disparity of bargaining power. The fact that she was an employee of a company is not enough to show gross disparity. Therefore, Plaintiff has not shown that the magistrate judge erroneously weighed this factor in favor of finding that the waiver was knowing and voluntary.

Second, Plaintiff seems to object to the fact that the magistrate judge took her education into consideration when determining that she had relevant experience. However, education is often a fact that courts use when evaluating whether a party has business or professional experience. *Boyd*, 2007 WL 2822518, at *19. It is undisputed that Plaintiff had (at a minimum) previously signed another contract with Meredith, and that she had held media/reporter positions with other

---

[1] She concedes that the first factor was met (i.e. "whether the clause containing the waiver was conspicuous") (Doc. 18, at 3), and so that factor weighs in favor of knowing and voluntary waiver.

stations in other parts of the country. Therefore, Magistrate Judge Mitchell's finding that this factor weighed in favor of voluntariness is not clearly erroneous or contrary to law.

Third, Plaintiff contends that she lacked any opportunity to negotiate her new contract since the contract was "a take it or leave it contract." (Doc. 18, at 5.) It is true that there is no evidence that Plaintiff had an agent to negotiate on her behalf or negotiated for her salary under the contract. *See, e.g.*, *Little v. Gray Media Grp., Inc.*, No. 23-2394-DDC-BGS, 2024 WL 624009, at *4 (D. Kan. Feb. 14, 2024). However, the mere fact that a contract contains a standard clause that is not negotiated does not make a waiver involuntary. *Phoenix Leasing Inc. v. Sure Broad., Inc.*, 843 F. Supp. 1379, 1385 (D. Nev. 1994) ("The evidence before us does not indicate [the signing party] was in any difficulty or under some form of duress . . . they were perfectly free to reject the deal.") *Connecticut Nat. Bank v. Smith*, 826 F. Supp. 57, 60 (D.R.I. 1993) (citing *Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 596 (N.D. Ill. 1989)) ("Even if defendants believed that they could not alter the preprinted form, '[t]his is not the kind of case that supports a 'necessitous men are not free men' approach . . . [or] calls on a court to rescue [defendants] from [their] contract[s].'"). Even if this lack of negotiation weighed in favor of ruling against free and voluntary waiver, there is no basis to conclude that the magistrate judge's ruling was in error or misapplied the relevant law.

Plaintiff's second objection to the underlying order is that the contract language of section 24 in the employment contract is ambiguous, and thus should be construed against the Defendant drafters. However, this argument was not presented before the magistrate judge and was raised for the first time in the objection. Thus, this argument was not preserved for review. *Marshall*, 75 F.3d at 1426. Moreover, even if the court were to consider the argument and review the contractual language for ambiguity, Plaintiff has not provided any justification for her alleged

5

alternative interpretation of the contested language; instead, she merely introduces alternative interpretations simply for the sake of manufacturing ambiguity. The waiver in section 24 applies to "any claims . . . to the full extent permissible under applicable law." The mere fact that section 24 uses "any claims" rather than a comprehensive list of claims does not make it ambiguous. *Little*, 2024 WL 624009, at *5; *see also Orduna v. Gray Media Grp., Inc.*, No. 23-2420-DDC-ADM, 2024 WL 21506, at *4 (D. Kan. Jan. 2, 2024) ("While broad, there is no ambiguity in this provision: the parties to the contract agreed to submit 'any claim,' without limitation, to a bench trial.").

Additionally, even if this court accepts Plaintiff's alleged second interpretation of section 24, which states that the waiver clause only applies to claims "that arise from the specific terms of the Employment Agreement which she was signing" (Doc 18, at 7), the statutory claims at issue still fall within the terms of the agreement. *Hedrick v. BNC Nat'l Bank*, 186 F. Supp. 3d 1189, 1192–93 (D. Kan. 2016); *see also Montalvo v. Aerotek, Inc.*, No. 5:13-CV-997-DAE, 2014 WL 6680421, at *14 (W.D. Tex. Nov. 25, 2014) ("Because the agreement is a general employment agreement, a dispute related to unlawful termination, by its nature, arises out of the agreement. While the agreement does not specifically mention disputes involving discrimination, it does not need to"). As a result, accepting Plaintiff's alternative construction of the contractual waiver language would not resolve the matter in favor of Plaintiff.

**IV.   Conclusion**

Defendant's objections to Magistrate Judge Mitchell's order issued on October 6, 2023 striking Plaintiff's demand for a jury trial is OVERRULED. (Doc. 17).

IT IS SO ORDERED.  Dated this 9th day of September, 2024.

                                                     s/ John W. Broomes
                                                     JOHN W. BROOMES
                                                     UNITED STATES DISTRICT JUDGE